UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ANEB SENKITA EL,

                              Plaintiff,              **MEMORANDUM AND ORDER**

               -against-                               13-CV-4079 (SLT) (CLP)

MAYOR OF THE CITY OF NEW YORK, *et al.*,

                              Defendants.
----------------------------------------------------------------x

**TOWNES, United States District Judge:**[1]

     Plaintiff Aneb Senkita El ("Plaintiff"), proceeding *pro se* and alleging "federal question" jurisdiction pursuant to 28 U.S.C. § 1331, brings this action against former New York City Mayor Michael Bloomberg, two state-court judges, two New York Police Department officers ("NYPD Officers") and an assistant district attorney who were involved in his January 2011 arrest and subsequent prosecution. The two judges—Hon. Matthew Sciarrino and Hon. George A. Grasso (collectively, the "State Defendants")—now move to dismiss this action, arguing, *inter alia*, that they enjoy absolute judicial immunity. For the reasons set forth below, the State Defendants' motion is granted on the ground that the judges are immune from suit, and they are dismissed from this action.

*BACKGROUND*

     Except as otherwise indicated, the following facts are drawn exclusively from Plaintiff's Verified Complaint (hereafter, the "Complaint") and are assumed to be true for the purposes of this Memorandum and Order. Plaintiff is "a domiciliary" of the State of New Jersey, but purports to be a "Moorish-American National." (Complaint, ¶ 4). Plaintiff implies that, as such,

---

[1] This Court gratefully acknowledges the assistance of an intern, Dylan Ruffi of Brooklyn Law School, in the preparation of this Memorandum and Order.

he cannot be prosecuted under State law and that judges have "a duty to prosecute the plaintiff, if the plaintiff could be prosecuted, ... in conformity with the laws of the United States and Treaties as a Moorish-American National." (*id.* at ¶ 2.)

Plaintiff was arrested in the early morning hours of January 29, 2011, following a routine traffic stop in Brooklyn. (*id.* at ¶ 10.) Plaintiff did not pull over immediately when he saw police lights behind him, but "continued down a block or so." (*id*.) When he did pull over, Plaintiff refused to roll down his window as instructed by NYPD Officers. (*id*.) The officers–defendants Faison and Thompson–then broke a window in Plaintiff's car, pulled him out of the vehicle and arrested him. (*id*.) Plaintiff was subsequently charged by criminal information in the Criminal Court of the City of New York, Kings County, with two misdemeanors and two traffic offenses.[2]

During the criminal proceedings that followed, Plaintiff "made an affirmative claim of National status as a Moorish-American." (*id.* at ¶ 38). He established his status "by supplying documentary evidence," (*id*.), and "filed affidavits objecting to the jurisdiction of the court thru out [*sic*] the proceedings." (*id*. at ¶ 12.) The Complaint implies that those affidavits contained a "plain and simple statement" as to why plaintiff should be granted "relief ... from prosecution ... [under] Art. 6 clause 2 of the Federal Constitution" and "Title 22 U.S.C. Chapter 2 Section 141, 195, Morrocan Treaty of Peace and Friendship of 1836 ...." (*id*.) Although Plaintiff's arguments

---

[2] The criminal information, which is attached as an exhibit to the Complaint, charged Plaintiff with obstructing governmental administration in the second degree and unlawfully fleeing a police officer in a motor vehicle in the third degree, in violation of N.Y. Penal Law §§ 195.05 and 270.25, respectively. The criminal information also charged Plaintiff with violating N.Y. V.T.L. §§ 375(2)(A)(1) and 1102 by driving with one headlight out and failing to obey the officers' commands.

were "not refuted by contrary prosecutorial evidence," (*id.* at ¶ 38), Judge Grasso summarily rejected the arguments. (*id*. at ¶ 22.) Subsequently, a Judge Gerstein, who is not named as a defendant in this action, "also did a similar act in an arbitrary and capricious manner without the law in mind and denied plaintiff's affidavits without a rebuttal from the prosecution ...." (*id*.)

In June 2013, Plaintiff filed in Criminal Court a *pro se* submission entitled, "Affidavit in lieu of a Motion to Dismiss on grounds of expiration of time C.P.L. 30.10(C) Or in the alternative, Removal to the Federal District Court Pursuant to Federal Criminal Procedure R. 58 Misdemeanors and Petty offenses and Causes arising under 22 U.S.C. 141 & 195," which is attached as an exhibit to the Complaint. Although the document is signed and notarized, it is more in the nature of a memorandum of law. As the title suggests, this submission principally sought to dismiss the charges against Plaintiff pursuant to Section 30.10 of New York's Criminal Procedure Law on the ground that the prosecution had not been timely commenced. Plaintiff also argued, in the alternative, that the action should be removed to the United States District Court because Plaintiff was a Moorish-American. Although the Complaint does not explicitly state which judge ruled on the motion or when that ruling was made, the pleading implies that the motion was denied.

In July 2013, Plaintiff, proceeding *pro se*, commenced this action against Mayor Bloomberg, Lt. Faison, Officer Thompson, ADA Paul Mysliniec, the State Defendants and two Doe defendants. Although the last four pages of the 11-page complaint purport to contain "Charges Against the Police Department of the City of New York," (Complaint at 8-11), the pleading does not contain separate causes of action with respect to each of the defendants named in the caption. Indeed, the body of the Complaint does not even mention Judge Sciarrino, much

less allege a cause of action against him or Judge Grasso.

However, the first two numbered paragraphs of the Complaint—which appear under the heading, "Federal Question"—both refer to one or more State Court Judges. (Complaint at ¶1-2.) The first numbered paragraph of the Complaint states, "[t]he plaintiff brings this suit under the federal question jurisdiction pursuant to 28 U.S.C. 1331 which is arising out of whether the State Court Judge was without authority and over stepped his bounds in violation of federal law by ignoring the federal law claims invoked by the plaintiff as a defense in a prior proceeding as a Moorish National pursuant to Title 22 U.S.C. 141 &195 ...." (*id*. at ¶ 1.) The second numbered paragraph states:

> Plaintiff's other federal question is Inclusive of whether the Judges had a duty to prosecute the plaintiff, if the plaintiff could be prosecuted, that it be in conformity with the laws of the United States and Treaties as a Moorish-American National, Title 22 U.S.C. 141 & 195, where the State Court must cease to apply State Law over Federal Law, where the plaintiff made a plain statement of why relief should be granted on the law and the facts. (*id*. at ¶ 2.)

These two "federal questions" are not expressly addressed elsewhere in the Complaint. However, the Complaint makes several subsequent references to judges. For example, a portion of paragraph 7 of the Complaint appears to be directed at the denial of his June 2013 motion, alleging:

> The Honorable Judge in this matter is in excess of authority; acting in an arbitrary and capricious manner invalidated the statute of limitations enforced in this State. The authority plaintiff relied upon was judicially ignored and the legislation was breached in the Court exceeding the bounds of the judges fiduciary Duty, Obligation and Oath of Office in violation of the Federal Constitution. (*id*. at ¶ 7.)

Similarly, paragraph 14 of the Complaint alleges:

> Plaintiff believes the State Court Judge is in excess of its authority on all issues involved in plaintiff's complaint and has breach [*sic*] the fiduciary duty of his office. Moreover, the State court is without jurisdiction to prosecute beyond the statute of limitations as established by the legislature and to do so would be a breach of Office and Oath. However a Justice of the Supreme Court must show proof of authority under law in the records to override their duty under the Federal Constitution Art 6 clause 2. And secondly the decisions rendered by the court was a State law decision to a federal question and as such, the decision is void in violation of Martin v. Hunter. (*id*. at ¶ 14.)

The complaint ends by seeking money damages in the amount of one million dollars (*id*. at 11).

### *The Motion to Dismiss*

The State Defendants now move to dismiss the claims against them. In their Memorandum of Law in Support of their Motion to Dismiss ("Defendants' Memo"), State Defendants argue, *inter alia*, that this Court lacks jurisdiction over them because "Plaintiff's Claims are Barred by the Doctrine of Absolute Judicial Immunity." (Defendants' Memo at 8-9.) Citing to *Stamp v. Sparkman*, 435 U.S. 359 (1978), and other Supreme Court cases, State Defendants argue that judges are immune from civil suit so long as they are performing a "judicial act" or one that is judicial in nature, unless they act in the "absence of all jurisdiction." (Defendants' Memo at 8.) Defendants' Memo does not specifically address the question of whether the State Defendants were acting in the absence of all jurisdiction. Rather, the State Defendants discuss the Supreme Court's test for determining whether an action is judicial and conclude that "since plaintiff is challenging ... the State Defendant's [*sic*] ruling in the underlying criminal proceeding," the doctrine of absolute judicial immunity applies. (*id.* at 9.)

State Defendants also raise several other arguments: that the Complaint fails to meet the pleading standard required by Fed. R. Civ. P. Rule 8(a)(2) and, as a result, fails to state a claim

upon which relief can be granted; that the Eleventh Amendment to the United States Constitution bars this Court from granting relief; and that the *Younger* abstention doctrine bars Plaintiff's suit due to his failure to assert his constitutional claims in the underlying criminal action. (*id.* at 2.) These four arguments need not be discussed in greater detail.

### *Plaintiff's Opposition Papers*

Plaintiff's "Memorandum of Law"("Plaintiff's Memo") does not address the absolute judicial immunity argument. Although Plaintiff does broach the subject of immunity, he claims only that "[q]ualified immunity should be denied for the reasons plaintiff is relying on in this case." (Plaintiff's Memo at 8.)

## *DISCUSSION*

### *Standards of Review*

A claim is "properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *Arar v. Ashcroft*, 532 F.3d 157 (2d Cir. 2008) (citing *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)). If "the case is at the pleading stage and no evidentiary hearings have been held ... [a court] must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (internal citations and quotations omitted) (brackets and ellipses added). However, "in adjudicating a motion to dismiss for lack of subject-matter jurisdiction, a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including

affidavits." *State Employees Bargaining Agent Coalition, v. Rowland*, 494 F.3d 71, 77, n. 4 (2d Cir. 2007).

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. If a party has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Id*. at 570. Even if the complaint does not plausibly state a claim to relief, the court must grant leave to amend the complaint if a liberal reading of the pleading "gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citing *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

When considering a Rule 12(b)(6) motion, materials outside the four corners of the pleading are "generally not considered … unless the court treats [the motion] as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, No. 03–CV–6233 (JBW), 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004). Aside from the allegations in the complaint, which are assumed to be true, a court can consider only "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to

documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

Finally, because Plaintiff is proceeding *pro se*, his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 790 (2d Cir. 1994)). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Furthermore, Plaintiff is not entitled to escape jurisdictional requirements or pleading standards simply because he proceeds *pro se*.

*Judicial Immunity*

Even construing the Complaint liberally and interpreting the pleadings as raising the strongest arguments they suggest, it is readily apparent that the State Defendants are immune from suit. "Like other forms of immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco,* 502 U.S. 9, 11 (1991) (*per curiam*). However, it is also "well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir. 2009). This "judicial immunity is conferred in order to insure 'that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Id.* (quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871)). The immunity is only overcome in "two sets of circumstances. First, a

judge is not immune from liability for nonjudicial actions. Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of jurisdiction." *Mireles*, 502 U.S. at 11 (internal citations omitted).

Although Plaintiff's Memo does not argue that the State Defendants acted in the absence of jurisdiction, Plaintiff appears to make that argument in his Complaint. First, the Complaint states that "Plaintiff believes the State Court Judge is in excess of its authority on all issues involved in plaintiff's complaint ...." (Complaint, ¶ 14.) Second, the pleading claims that "the State court is without jurisdiction to prosecute beyond the statute of limitations as established by the legislature." (*id.*) Accordingly, this Court will briefly address these two arguments.

First, to the extent that Plaintiff is asserting that state courts lack jurisdiction to prosecute Moorish-Americans, that argument has been repeatedly rejected. A person's "purported status as a Moorish-American citizen does not enable him to violate state ... laws without consequence." *Allah El v. District Attorney for Bronx County*, No. 09 CV 8746 (GBD), 2009 WL 3756331, at *1 (S.D.N.Y. Nov. 4, 2009). Accordingly, the argument that a person "is entitled to ignore the laws of the State of New York by claiming membership in the 'Moorish-American' nation is without merit ...." *Bey v. Bailey*, No. 09 Civ. 8416, 2010 WL 1531172, at *4 (S.D.N.Y. Apr. 15, 2010).

Plaintiff's arguments relating to N.Y.C.P.L. § 30.10 are also without merit. That section establishes statutes of limitations for various offenses. For example, section 30.10(2)(c), the subsection to which Plaintiff was presumably citing in his June 2013 motion, provides that "[a] prosecution for a misdemeanor must be commenced within two years after the commission thereof."

9

The government clearly did not violate the dictates of § 30.10(2)(c) in Plaintiff's case. Although the criminal charges may have still been unresolved in July 2013 when Plaintiff commenced this action, documents attached to Plaintiff's Complaint show that the criminal case was commenced in early 2011, shortly after Plaintiff's arrest. Moreover, even if the case had not been timely commenced, nothing in § 30.10 would have deprived the Criminal Court judges of jurisdiction. Rather, arguments pursuant to § 30.10(2)(c) are raised in a motion to dismiss—in the very manner which Plaintiff raised his statute of limitations argument—and are adjudicated by the Criminal Court.

In considering the next exception to absolute judicial immunity—whether judges acted outside their judicial capacity—courts employ "a functional approach, under which [a]bsolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." *Oliva v. Heller,* 839 F.2d 37, 39 (2d Cir. 1988) (internal quotation marks and citations omitted). The crucial "factors determining whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. Under this approach, federal courts have held that both federal and state law judges are absolutely immune for acts undertaken in their official capacities. *See Lewittes v. Lobes*, No. 04 Civ. 0155 JSR AJP, 2004 WL 1854082, at *4 (S.D.N.Y. Aug. 19, 2004) ("It goes without saying that the decisions in this Circuit have applied these principles to hold that suits against New York State judges are foreclosed by the doctrine of absolute immunity."); *Holland v. Rubin*, 460 F. Supp. 1051, 1052 (E.D.N.Y. 1978) ("[P]laintiff's claim for money damages against the State court judges is

foreclosed by the absolute immunity from civil liability conferred upon judges acting within the scope of their judicial capacities."). Indeed, even Administrative Law judges enjoy absolute immunity under such circumstances. *See Butz v. Economou,* 438 U.S. 478, 513 (1978) ("[T]he role of the modern federal hearing examiner or administrative law judge ... is 'functionally comparable' to that of a judge."); *Bey v. State of New York,* No. 10–CV–1446 (NGG), 2010 WL 1688066, at *3 (E.D.N.Y. Apr. 21, 2010) (absolute judicial immunity would bar any claims for damages against New York City Administrative Law Judges).

Plaintiff does not contest the fact that the State Defendants were acting in their judicial capacities at all times relevant to this action. Indeed, the State Defendants were performing functions that are normally performed by a judge, such as scheduling court appearances, conducting conferences, and deciding motions. Plaintiff dealt with the State Defendants solely in their capacities as Criminal Court judges. Accordingly, neither of the exceptions to absolute judicial immunity are met in this case.

While other meritorious arguments are raised in Defendants' Memo, this Court need not reach them. Plaintiff's claims against the State Defendants are barred under the doctrine of absolute judicial immunity. Accordingly, the State Defendants' motion to dismiss is granted on this basis alone.

## *CONCLUSION*

For the reasons set forth above, State Defendants' motion to dismiss is granted.

Accordingly, Defendants Sciarrino and Grasso are dismissed from this action.

**SO ORDERED**.

                                          S/
                                    SANDRA L. TOWNES
                                    United States District Judge

Dated: September 30, 2014
          Brooklyn, New York